J. Lester Mee, Appellee, v. Jacob Marks et al.,
Appellants.

Gen. No. 40,964.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed April 8, 1940.

ROTHBART & ROSENFIELD, of Chicago, for appellants.

CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action under the Illinois Securities Act to recover money paid for stock with attorneys' fees, the court on plaintiff's motion for summary judgment found for plaintiff in the sum of $3,750 with $750 for

attorneys' fees, and the defendant partnership appeals. The question is whether the court erred in granting the motion for summary judgment.

The stock was purchased through one, Ben Minturn, who claimed to represent and act for the partnership and while judgment was also rendered against him he does not appeal.

The complaint avers that May 19, 1937, Minturn on behalf of the defendant partnership, sold to plaintiff one thousand shares of the common stock of General Carpet Company, a Pennsylvania corporation, for which plaintiff paid to the partnership $3,750; that the partnership, Marks, Laser & Co., delivered this stock to plaintiff and plaintiff paid them for it; that the stock was of the class known as "Class D" under the securities law; that defendants had not complied with the provisions of the securities law with respect thereto; that the sale was null and void under the statute, and that plaintiff elected to rescind the sale on February 10, 1938, tendered the stock to Marks, Laser & Co. and Minturn, and demanded the return of the money paid which was refused; that plaintiff was compelled to employ attorneys and pay reasonable fees, which were said to be $1,000. The complaint also charges false representations by defendants upon which plaintiff relied.

The answer says that defendants are brokers and carried on a brokerage business, were members of the New York and Chicago stock exchanges; that Minturn was an independent broker; that the sale was made by Minturn individually and that the partnership delivered the stock on Minturn's behalf. The answer denies false representations or representations of any kind; admits that the stocks were not exempted from the provisions of registration required by the securities law, but says the law was not applicable, and denies that the acts of Minturn were authorized or that the partnership was associated in the sale of the stock.

In support of his motion for summary judgment plaintiff states that prior to May 18, 1937, he carried an account with the partnership, Marks, Laser & Co., in which on that date he had a credit balance of $838.35, as shown by the statement of Marks, Laser & Co. attached; that on that date he purchased the stock through his father, Lester E. Mee, who acted as plaintiff's agent in that behalf, giving the order through Ben Minturn; that after the order was placed affiant went to the offices of Marks, Laser & Co.; that Minturn was there present purporting to represent Marks, Laser & Co. in the transaction; went with affiant to the cashier's cage in the office; introduced affiant to the agent of Marks, Laser & Co. in charge, and affiant paid for the stock by instructing the person in charge of the cashier's cage to transfer the credit balance in affiant's commodity account in partial payment and by making payments as appear from exhibit 1, which is attached to the affidavit; that thereafter Marks, Laser & Co. issued its receipt to affiant for $3,750, a copy of which is attached; that Marks, Laser & Co. also delivered certificates numbered NJ–946 to NJ–955, inclusive, for the shares of General Carpet Co. stock to the affiant through the mails; copies of the certificates are also attached; that prior to the purchase or receipt of statement, receipt or certificates affiant had not received any prospectus of any kind from anyone relative to the stock.

The exhibits attached are the statement of account issued on the stationery of Marks, Laser & Co. and the receipt issued by them, dated at New York, 5/24/37, to plaintiff which reads: "We have this day CREDITED your Stock Account $3750.00, Payment of Gen'l Carpet Subs. (Payment as of 5–19)." The receipt also states: "We are responsible only for contracts placed with and confirmed by us and remittances received by us. Correspondent brokers and associate brokers are the agents of their customers and not our agents."

In support of the motion plaintiff also submitted the affidavit of his father to the effect that pursuant to authority from plaintiff he from time to time gave orders to buy and sell commodities and stocks to Marks, Laser & Co. for the account of plaintiff; that on May 18, 1937, through Ben Minturn, one of the defendants, "who represented himself to be an agent acting on behalf of said Marks, Laser & Co." he placed an order for 1,000 shares of the common stock of General Carpet Co. with Marks, Laser & Co.; that subsequent to placing the order for the stock and to the payment for the same, exhibits 1 and 2 to the affidavit of J. Lester Mee, were delivered to affiant's office by a United States postman in an envelope bearing the name Marks, Laser & Co., which was postmarked Chicago, Illinois.

In support of the motion plaintiff also submitted the affidavit of Joseph Adler, assistant trust officer of the Corporation Trust Company, transfer agent of General Carpet Company. His affidavit is to the effect that he had full knowledge of the books and records of the corporation relating to the transfers of stock, and that the certificates here involved were issued in the name of J. Lester Mee, and that the shares of stock representing the certificates were transferred from certificates numbers NJ–720 to NJ–729, inclusive, for 100 shares each, standing in the name of Marks, Laser & Co.

The affidavit of Raymond F. Fischer was also attached showing that in his opinion a reasonable attorney's fee for the work done was $750.

As against the motion the defendants submitted the affidavit of Morton M. Weil, one of the partners, who says "that Marks, Laser & Co. at no time employed Ben Minturn, nor was said Minturn at any time in any way, shape or manner connected with or associated with the partnership of Marks, Laser & Co., other than as set forth herein; that said Minturn was an inde-

pendent broker engaged in business for himself and was so licensed to engage in the brokerage business for and on behalf of himself by the Secretary of State of the State of Illinois, and maintained his own separate office and place of business; that said Minturn transacted and engaged in said business of broker and was a member of the Chicago Curb Exchange; that the partnership of Marks, Laser & Co. at no time transacted any business with or for the account of plaintiff J. Lester Mee; that said Mee was a customer of the defendant Minturn and all transactions referred to in the complaint and in the affidavits filed in support of the summary judgment were had between plaintiff and Minturn; that said Minturn was a correspondent broker of the partnership; that Minturn had no bookkeeping facilities for maintaining customers' accounts or records of customers' accounts and as a convenience to said Minturn, and in accordance with the common custom and usage in existence in the brokerage business for many years last past, said partnership maintained a record of the bookkeeping transactions of the customers of said Minturn; that said maintenance of said records for said customers of defendant Minturn was done by the partnership merely as a convenience to said Minturn and that said partnership received no compensation or consideration therefor; that said Minturn further had no facilities for handling large amounts of cash or securities deposited by his customers and as a further convenience to said Minturn, said partnership agreed to and did accept moneys and securities deposited by customers of said Minturn, which was further done as aforestated, merely as a convenience to said Minturn without the payment of any compensation or consideration therefor to said partnership; that the partnership had no further connection with any of the transactions referred to in the complaint and in the affidavits for summary judgment, other than as set forth herein.''

This affidavit denies the allegations of paragraph 2 of the affidavit of Lester E. Mee in so far as the same alleges that Lester E. Mee gave orders to the partnership to buy and sell commodities and stocks for the account of plaintiff, and on the contrary alleges that if any orders were given, Lester E. Mee and J. Lester Mee gave the orders to defendant Minturn and not to Marks, Laser & Co., or anyone associated or identified with them. This affidavit calls attention to the fact that exhibit 2 filed by plaintiff states that the partnership is responsible only for contracts placed with and confirmed by the partnership, and that it is specifically there provided that correspondent brokers are the agents of their customers and not the agents of the partnership. The affidavit also states that the stock received by plaintiff was never the stock of the partnership other than in the normal course of transfer, in accordance with the custom and usage existing for many years in brokerage business; that the shares of stock prior to the time they were delivered to plaintiff belonged to General Carpet Company and were transferred from the name of that company to the name of the partnership and then to the name of plaintiff at the direction and request of the defendant Minturn; that the partnership received no consideration of any kind whatsoever for any of the transactions referred to in the complaint or in the motion for summary judgment and affidavits in support thereof; that any commission in connection therewith was received by defendant Minturn; that the entire transaction referred to in the complaint and affidavits was a transaction between plaintiff and defendant Minturn, and that the partnership had no further connection with the transaction other than as stated therein.

The trial judge stated the reason for his finding and judgment, saying correctly, we think, that the affidavit of the defendant partners does not deny the essential thing stated in plaintiff's claim, namely, that Minturn

in fact held himself out as the agent of defendants, and that they by their acts ratified what Minturn did with respect to the transaction with plaintiff. As the court pointed out, the affidavits show much more than a mere isolated act. The whole transaction took place in defendants' place of business in Chicago, Illinois. Defendants took the money. Defendants' books show the transaction as made was their own. The facts present precisely the kind of case to which the statute providing for summary judgments was intended to apply. The object of a proceeding of this nature is to determine whether there is an issue of fact for the jury. The distinction between affidavits of defense required under former Practice Acts and those necessary upon motions of this kind has been pointed out in *People for use of Dyer v. Sanculius*, 284 Ill. App. 463, where we quoted with approval the language of Professor McCaskill: "There is a striking difference between the affidavits required by this rule and the affidavits which were employed under those sections of former practice acts which established a modified form of summary judgment. The affidavits contemplated in this rule are designed to inform the Court of the existence or non-existence of an issue worthy of trial, whereas the affidavits formerly employed were designed primarily to advise a party of the nature of his adversary's claim of defense."

This also, it is believed, represents the views of the Supreme Court expressed in *People ex rel. Ames v. Marx*, 370 Ill. 264, and by this court in *Chicago Title & Trust Co. v. Cohen*, 284 Ill. App. 181; *Wainscott v. Penikoff*, 287 Ill. App. 78, and is in harmony with the practice in other states which have adopted similar rules, *Dibble v. Jones*, 130 Misc. 359, 223 N. Y. S. 785.

For the reasons indicated the judgment of the trial court will be affirmed.

*Judgment affirmed.*

O'CONNOR and MCSURELY, JJ., concur.