David Silbert et al., Appellees, v. Dan L. Laser et al., Trading as Marks, Laser and Company, and General Carpet Corporation. William G. Diamond, Trustee in Bankruptcy of Estate of General Carpet Corporation, Intervenor, Appellant.

Gen. No. 41,289.

Opinion filed December 23, 1940.

CHAPMAN & CUTLER, of Chicago, for appellant; ROSCOE C. NASH and DAYTON OGDEN, both of Chicago, of counsel.

MYER H. GLADSTONE, of Chicago, for appellees.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs brought suit to recover damages alleged to have been sustained by them on purchases of shares of stock of the General Carpet Corporation sold in

violation of the Illinois Securities Law, Ill. Rev. Stat. 1939, ch. 121½, par. 132 [Jones Ill. Stats. Ann. 13.48]. The three plaintiffs alleged several and distinct claims, but the several dealings occurred at substantially the same time. Plaintiff David Silbert purchased 1,000 shares, plaintiff Belle Silbert, 400 shares, and Helen Postelnek, secretary to David Silbert, 100 shares, all at $3.75 per share.

Prior to the trial defendant General Carpet Corporation was adjudged a bankrupt and William G. Diamond, trustee in bankruptcy, intervened and defended. All the other defendants, on motion of plaintiffs, were dismissed.

Plaintiffs alleged that they bought shares of the General Carpet Corporation through Marks, Laser & Company, a brokerage firm; that in making these sales the brokerage house was the agent for the General Carpet Corporation; that the shares in question were not qualified as required by the Illinois Securities Law and hence plaintiffs were entitled to disaffirm the sale and recover from the carpet corporation the amount paid for the shares and their attorney's fees. Upon trial by the court there was a finding in favor of plaintiffs, judgment was entered against the General Carpet Corporation and in favor of David Silbert for $4,417.67, Belle Silbert, $1,766.67, and Helen Postelnek $441.67—aggregating $6,626.01.

Defendant asserts that Marks, Laser & Company were the owners of the stock and not the agents of the General Carpet Corporation in making these sales. This presents a question of fact.

The carpet corporation was organized under the laws of Pennsylvania and was a consolidation of several eastern carpet manufacturers. In the early part of 1937, it was sought to finance the company through the sale of shares of common stock. Defendant says an agreement was made between B. E. Buckman & Co. of Madison, Wisconsin, and the carpet corporation

looking to the purchase by the former of 100,000 shares of carpet corporation. stock with an option on 200,000 more. The agreement permitted Buckman & Co. to transfer or assign all or part of its shares to other security dealers, and defendant says substantial blocks were delivered by Buckman & Co. to Marks, Laser & Company, which included the shares purchased by plaintiffs. Defendant argues that Marks, Laser & Company, in taking over stock from Buckman & Co., were underwriting a portion of the issue of stock which Buckman & Co. had agreed to take and which it was permitted to assign to brokers.

Defendant also stresses a number of items of evidence which it claims show that Marks, Laser & Company were the owners of the shares sold to plaintiffs. The stock certificates issued to plaintiffs read that "Marks, Laser & Company is the owner of one hundred shares," etc.; that these certificates bore the usual assignment form on the reverse side transferring all of the interest of Marks, Laser & Company in the shares of stock to the respective plaintiffs; that these assignments purport to pass the title of Marks, Laser & Company, not as agent but as the principal. Also, in the memorandum confirming the sales to plaintiffs the printed words referring to the sale as made by "your broker" were deleted so that the document reads, "We have this day sold to you as principal upon your order . . ." Defendant introduced conversations and statements to show that the sale of the stock was by Marks, Laser & Company as owner and not as agent of the carpet company.

Plaintiffs on the other hand call attention to the Federal Securities Law of 1933, as amended (15 U. S. C. A. 77a to 77aa), requiring in the prospectus offering stock to the public, issued and published as demanded by the act, a disclosure of the names and addresses of the underwriters. The prospectus issued by the carpet corporation names B. E. Buckman & Co. as principal

underwriter and Eugene J. Hynes & Co., Inc., associate underwriter. No disclosure was made to the public or to anyone that Buckman & Co. had assigned a portion of its commitment to Marks, Laser & Company. Plaintiffs' counsel argues that if this had been done that fact should have been disclosed to the Securities and Exchange Commission, and in the prospectus, and because such disclosures were not made, Marks, Laser & Company were not associate underwriters under the Buckman contract.

Plaintiffs say Marks, Laser & Company merely took subscriptions for stock as agents. On the next day after the purchase by plaintiffs, Marks, Laser & Company issued and mailed a statement to David Silbert which recites that his stock account has been debited with the amount of the purchase, "a/c subscription 1000 General Carpet," and the New York office of Marks, Laser & Company mailed a memorandum to Silbert reciting that his stock account had been credited with $3,750 as "payment of General Carpet subs."

Silbert testified he "subscribed" for himself and his wife for the shares of stock, and he received through the mail from Marks, Laser & Company an acknowledgment of his "subscription" for 1,000 shares of General Carpet and that his "subscription" was transferred to the New York office. He further testified that when he was first solicited to subscribe to the capital stock of the carpet corporation he asked Morton Weil, a partner of Marks, Laser & Company, about the carpet company which "your firm is taking subscriptions for."

Weil testified that Marks, Laser & Company were taking subscriptions to the stock of the carpet corporation, and Isaac Rice, who was a director of the carpet corporation and chairman of its finance committee, and also its secretary, testified that Marks, Laser & Company would call him in New York "every day or so and give me the total of the subscriptions."

In a conversation between Weil and Rice in Chicago in April, 1937, Rice expressed some anxiety over a statement of a member of the firm of Buckman & Co. that they would not take down any stock until conditions showed material improvement. At the same time Rice asked Weil if Marks, Laser & Company would act as agents for the carpet corporation. Weil said he would talk it over with some of his partners, and he discussed the proposition with them. The following day he told Rice that Marks, Laser & Company would agree to act for the carpet corporation in accepting subscriptions for their stock and forward these to Rice, chairman of the finance committee in New York. Eventually Buckman & Co. failed to take the shares described in the underwriting agreement.

Weil testified that his company "never purchased any securities for its own account. It only acted as agent in all circumstances."

There is no evidence that the carpet corporation ever considered the taking of subscriptions by Marks, Laser & Company as underwriting or as any assignment of any part of Buckman's contract.

When we examine the alleged contract by which defendant claims an underwriting agreement with Buckman & Co. we find substantial reasons for concluding that it does not bind Buckman & Co. to purchase stock of the carpet corporation unconditionally. The original contract was between B. E. Buckman & Company, as one party, and the Alva Carpet and Rug Company and Parker-Wylie Carpet Manufacturing Company as the other parties. These carpet companies were subsequently merged into the General Carpet Corporation. Counsel for defendant assert the General Carpet Corporation assumed this contract by a writing which has been introduced in evidence. The alleged signature of the General Carpet Corporation appears on the contract as follows:

"Dated ........................, 1937.
     GENERAL CARPET CORPORATION,
     By ..............................
           .......... President.
"Attest:

..............................
             Secretary."

Apparently neither the president nor secretary nor any other officer of the carpet company signed this paper. Its binding force may well be questioned.

Moreover, the contract contains provisions which negative the claim that Buckman & Co. agreed to purchase the stock unconditionally. In a letter from Marks, Laser & Company, Rice of the carpet company was informed that this contract might be construed as giving Buckman & Co. "unusual facility in withdrawing from the picture." It was provided by this contract that Buckman & Co. would "receive reasonable compensation for their services." Compensation for services is incompatible with the idea of purchasing the stock unconditionally. There was also a provision which permitted the underwriter, without any liability, to terminate the agreement when in its "sole judgment" it was inadvisable to offer the stock at public sale. There were also other items of evidence tending to support the position of the plaintiffs that Marks, Laser & Company in making the sales of stock were acting as agents for the carpet corporation.

Defendant seems to rely largely upon the language of the certificates of stock issued to plaintiffs wherein Marks, Laser & Company is described as "the owner" of the shares. Weil testified that the funds received from the sale of stock were sent to the New York office of the General Carpet Corporation and, "on account of the tax situation in New York, certificates were issued in the name of Marks, Laser & Company," who would transfer them to the name of the actual sub-

scriber. Rice of the carpet corporation wanted the certificates issued in the name of the individual subscribers so that the carpet corporation could show a reasonable number of stockholders, which would entitle the company to be listed on the board of trade. There were some conferences on the question in whose name the certificates should appear, and it was finally agreed they should be issued in the name of Marks, Laser & Company and then transferred to the name of the subscriber.

From the entire record before us, we are of the opinion it is conclusively shown that Marks, Laser & Company never invested any money of theirs in the stock of the General Carpet Corporation nor purchased any of the stock on their own account, and that in the transactions in question they were acting as agents.

Defendants argue it is not sufficiently proved that plaintiffs paid for the shares of stock. The stock certificates issued to plaintiffs recite that they are fully paid.

David Silbert testified he and his wife, Belle Silbert, had a joint account with Marks, Laser & Company and at his request this account was charged with the amount of his and his wife's purchases of stock. There was also a memorandum in evidence from Marks, Laser & Company to David Silbert stating they had credited his stock account with payment for the General Carpet subscription. About this time Silbert's credit balance with this firm was between $10,000 and $20,000. Helen Postelnek also had an account with Marks, Laser & Company and her 100 shares were paid for out of this account. This is much like the method of payment that was considered by this court and held sufficient in *Mee v. Marks,* 304 Ill. App. 370.

Defendant argues that error was committed by the trial court in its rulings on evidence. We find nothing in this respect of sufficient importance to justify a re-

versal. Some rulings by the court might be criticized but they were for the most part made in sustaining objections by the attorney for defendant. For instance, when Weil was asked if his company, Marks, Laser & Company, had received payment for the stock sold to plaintiffs, and answered in the affirmative, objection was sustained on the ground this was a conclusion of the witness. It might be said in passing that most of the testimony given by witnesses is the result of "conclusions."

No question is raised on this appeal as to the violation of the Illinois Securities Law in these sales to plaintiffs, nor is there any question raised as to the amount of attorney's fees allowed.

The facts appearing justified the conclusion of the trial court and, as there were no reversible errors upon the trial, the judgment is affirmed.

*Judgment affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.